**VALI-CHEK, INC., Plaintiff-Appellant,**

v.

**SECURITY-CONNECTICUT INSURANCE COMPANY, Defendant-Appellee.**

No. 87-723.

Court of Appeals of Iowa.

March 9, 1988.

George A. Wilson, III and Richard La Jeunesse of Dreher, Wilson, Simpson, Jensen, Sellers, Adams & Kaiser, P.C., Des Moines, for plaintiff-appellant.

Sheila K. Tipton of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for defendant-appellee.

Heard by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

DONIELSON, Judge.

The plaintiff corporation appeals from the district court's decision ruling in favor of the defendant insurer and finding that the insurance policy in question was void ab initio for failure of the plaintiff to satisfy a condition precedent set forth in the policy. We reverse.

Vali-Chek is an Iowa corporation. In 1982 it had three stockholders, all of whom also served as officers. In that year the three stockholders entered into an agreement providing that upon the death of any stockholder, the corporation would repurchase the shares held by the deceased stockholder. These repurchases were to be funded by the proceeds of life insurance policies, to be purchased by the corporation, insuring the life of each stockholder.

After shopping for nearly a year, Vali-Chek purchased life insurance on each of the three stockholders from Security-Connecticut Life Insurance Company. Seventeen days after the policy was delivered, Vali-Chek stockholder Thomas Driscoll died of complications from surgery for gall bladder and pancreas problems. When Vali-Chek attempted to collect proceeds from the policy insuring Driscoll's life, Security-Connecticut refused to pay. Security-Connecticut relied on a policy provision stating that the policy would not take effect if the insured's health changed, so as to increase the mortality rating or class of risk, between the time of the initial application for coverage and the time the policy was delivered and the first premium paid. Security-Connecticut took the position that the insured's continued good health between application and delivery was a condition precedent, the failure of which caused the policy not to take effect.

Vali-Chek filed the present suit seeking to compel Security-Connecticut to pay the policy proceeds. The district court ruled in favor of Security-Connecticut, and Vali-Chek has appealed.

Our scope of review is for the correction of errors at law. Iowa R.App.P. 4. Find-

ings of fact are binding upon us if supported by substantial evidence. Iowa R.App.P. 14(f)(1).

Vali–Chek contends the district court erred by holding that Security–Connecticut was entitled to avoid the policy on the ground a condition precedent, Driscoll's continuing good health between application and delivery, had not been met. Vali–Chek argues the evidence did not establish the existence or breach of such a condition precedent.

The policy in question provided the following language:

This Policy shall not take effect:

1. Until the Policy has been delivered to you;

2. Until you pay the first premium as above during the Insured's life time; and

3. If the Insured's health as shown in the application has changed so as to increase the mortality rating or class of risk before delivery and payment as above are complete.

There is no dispute that items (1) and (2) of the above provision were met. At issue is item (3). At the time of Vali–Chek's application for insurance on September 23, 1983, Security–Connecticut knew Driscoll was a sixty–five–year–old man who smoked, was obese, and suffered from high blood pressure, hypertension, and respiratory problems; Security–Connecticut also knew that Driscoll was possibly going to have hernia surgery. Security–Connecticut also knew Driscoll's parents died at ages sixty-six and sixty-eight. At no time did Security–Connecticut require Driscoll to undergo a medical examination nor did Security–Connecticut have a physician review Driscoll's medical records, both of which Security–Connecticut was entitled to do. On October 24, 1983, Driscoll experienced severe abdominal pain; he was admitted to the hospital where tests were performed which revealed Driscoll had acute pancreatitis, cholecystitis, chronic gastritis, a gastric ulcer, a hiatal hernia, and two incisional hernias. He was discharged November 5, 1983. The policy was issued on November 7, 1983, with a policy date of November 15, 1983. At the time of delivery of the policy on November 7, 1983, Security–Connecticut's agent was asked by Kelly Gruber, a stockholder in Vali–Chek, if he knew that Driscoll had been in the hospital. Security–Connecticut's agent responded affirmatively. The agent did not relay this information to the company. The agent assumed Driscoll was in the hospital for hernia surgery; he asked no further questions regarding Driscoll's hospitalization. Driscoll had surgery on November 21, 1983, for an exploratory laparotomy, removal of the gall bladder, and the hernia repair. Driscoll died two weeks later due to complications from the surgery, specifically, an infection and shock. Following Driscoll's death, Security–Connecticut requested further medical information.

We are in agreement with Vali–Chek's position that the facts as herein set forth are more than sufficient to put Security–Connecticut on notice that further medical inquiry should have been undergone to ascertain "the insured's health had not changed so as to increase the mortality rating or class of risk before delivery" of the policy. *See Major Oil Corp. v. The Equitable Life Assurance Society of the United States*, 457 F.2d 596, 604 (10th Cir. 1972) (as a matter of law, defendant insurance company had sufficient information to put it on notice to investigate answers; "In such event it cannot blind itself from ascertaining the truth and later claim willful misrepresentation of the truth on which it relied in order to avoid payment under the policy."). As the district court stated in the case at hand, "It is likewise common knowledge that very few insurance companies will issue life insurance policies without investigating the proposed insured as to the status of his or her health." The district court made light of Vali–Chek's argument that only the insurer knows whether a change of health increases the mortality rating or class of risk; instead, the court put its entire emphasis on Driscoll's "change of health." We are in agreement with the district court's conclusion that the policy does not need interpretation because the language is not ambiguous,

but we do not adopt the district court's reasoning that the sentence, "This policy shall not take effect if the insured's health as shown in the application has changed so as to increase the mortality rating or class of risk before delivery and payment as above are complete," need not be read in its entirety. The district court made the following finding of fact:

22. The Court finds that Mr. Driscoll did in fact experience a significant change of health during the pendency of the Application and that this change of health increased the class of risk.

We do not find there is substantial evidence to support this finding. In fact, we cannot find any evidence at all, other than a bald assertion that Driscoll's medical problems resulting in surgery on November 21, 1983, increased the class of risk. Surely, the insured cannot be expected to carry the burden to prove his insurability according to the insurance company's standards. In fact, Security–Connecticut's witness Perrine testified that it was the company's duty to determine this. In addition, the death of Driscoll was not caused by one of the medical conditions for which he was hospitalized but instead he died from complications following surgery. It was admitted by Security–Connecticut's vice-president and chief underwriter, Perrine, that had the surgery Driscoll underwent been a success and Driscoll was healthy afterwards, he would have fallen within Security–Connecticut's insurance rating.

We find Security–Connecticut to be in breach of the policy issued to Vali–Chek: the the policy was delivered; Security–Connecticut accepted the first payment; and Security–Connecticut through its agent knew of Driscoll's hospitalization, as well as his medical history, yet failed to investigate further, nor presented evidence that Driscoll's medical condition had, in fact, increased the mortality rate or the class of risk. Security–Connecticut cannot now be allowed to deny coverage. We therefore reverse the district court and enter judgment for Vali–Chek against Security–Connecticut in the amount of $35,000 with interest at 10% plus the costs of this action.

Because of our ruling, we need not address Vali–Chek's other theories of recovery.

REVERSED.